UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MARLON E. ROJAS, | ) | No. ED CV 09-01971-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge's ("ALJ") finding at

|   |   |   |
|---|---|---|
| 1 |  | step two that Plaintiff's mental impairments are not |
| 2 |  | legally severe is based on a proper evaluation of evidence |
| 3 |  | from treating, consulting, and non-examining sources; |
| 4 | 2. | Whether the ALJ's finding that Plaintiff's prescribed |
| 5 |  | medications do not impose any functionally limiting side |
| 6 |  | effects is based on a proper evaluation of treating |
| 7 |  | physician evidence, medical expert testimony, and |
| 8 |  | Plaintiff's subjective complaints. |

(JS at 7.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE STEP TWO FINDING THAT PLAINTIFF DOES NOT HAVE A SEVERE MENTAL IMPAIRMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

In the ALJ's decision (AR 10-22), he concludes that the Plaintiff does not have a severe mental impairment:

> "The [Plaintiff's] medically determinable mental impairments of an adjustment disorder and organic brain damage (due to a traumatic head injury) do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (AR 14.)

Plaintiff challenges the adequacy of this determination.

Plaintiff primarily relies upon the consultative complete psychological evaluation ("CE") of November 21, 2006 performed by Dr. Colonna, at the request of the Department of Social Services (See AR at 405-10), along with the Psychiatric Review Technique ("PRT") conclusions of the State Agency psychiatrist (AR 497-510), in particular, the conclusions of the State Agency psychiatrist that Plaintiff has moderate limitations in maintaining concentration, persistence or pace. (AR 508.)

### A. Applicable Law.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other

treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

4

is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00,

"Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step Two, a Listing level impairment at Step Three, and the determination of an individual's MRFC at Step Four.

**B.   Analysis**.

Both the ALJ, and the Commissioner in this litigation, rely upon the reports of Dr. Colonna, the CE, to substantiate the conclusion that Plaintiff does not have severe mental impairments. Indeed, the ALJ interpreted Dr. Colonna's report as indicating that, "The [Plaintiff] is not significantly limited by any mental illness,

consistent with her detailed clinical findings and the objective test results." (AR at 15, citing Dr. Colonna's report [erroneously referred to as Exhibit ["Ex."] 12F], and Social Security Ruling ["SSR"] 96-2p.) The ALJ concluded that Plaintiff's mental impairments are considered not severe because they "cause no more than 'mild' limitation in any of the first three functional areas ..." (Id.)

The ALJ acknowledged the findings of the State Agency psychiatrist, who concluded, based upon utilization of the PRT, that Plaintiff has moderate restrictions in concentration. (Id.) The ALJ discounted this finding, instead giving "significant weight" to Dr. Colonna's assessments because they were more "consistent with the medical and other evidence." (Id.)  As to the State Agency psychiatrist's assessment of moderate restrictions on one area of functioning, this was discounted because it was "not well established, in light of the detailed exam findings and the psychological test results and the claimant's presentation upon evaluation." (Id.) Presumably, the exam findings refer to those of Dr. Colonna, as do the psychological test results, and "claimant's presentation upon evaluation" is also presumably based upon Dr. Colonna's report.

The ALJ's conclusions fail to meet the substantial evidence test because Dr. Colonna's report cannot be read as consistent with a conclusion that Plaintiff has only "mild" limitations in the relevant mental functional areas of activities of daily living; social functioning; and concentration, persistence or pace as set forth in 20 C.F.R. §404.1520a(c)(4). As indicated in 20 C.F.R. §404.1520a(d)(1), a conclusion that an individual has either "none" or "mild" limitations in the first three functional areas will generally substantiate a finding of a non-severe impairment. Very clearly,

7

however, Dr. Colonna's report does not substantiate such conclusions. Essentially, the conclusions drawn by Dr. Colonna in the "Prognostic Impressions and Medical Source Statement" area of her report are not readily translatable into the precise findings required by the regulations. For example, as to the evaluation of Plaintiff's concentration, persistence or pace, Dr. Colonna offers her conclusion that Plaintiff would be able to "understand, remember and carry out short, simplistic instructions without difficulty," and that he has "mild inability to understand, remember and carry out detailed instructions. He would be able to make simplistic work-related decisions without special supervision." Whether this in fact translates into only a "mild" limitation in Plaintiff's concentration, persistence or pace cannot be divined from these descriptions. Similarly, in the area of social functioning, Dr. Colonna concludes that Plaintiff is "socially appropriate with the examiner and he presents with the ability to interact appropriately with supervisors, coworkers and peers." (AR 409.) Again, one cannot immediately conclude that this translates into only a "mild" deficiency in social functioning. These ratings are specific, and should be made by an appropriate, qualified medical professional utilizing the exact terminology required by the regulations. Finally, as to activities of daily living, there is no finding in Dr. Colonna's report. The ALJ noted that Plaintiff "reported that he had difficulty interacting with others and needs assistance with his daily activities of living," (AR 13, citing Plaintiff's Disability Report - Adult, dated April 18, 2007. (AR 162-70.) The ALJ further noted that with respect to Plaintiff's activities of daily living, Plaintiff reported that he is "unable to care for my personal needs." (AR 19, citing Plaintiff's

Disability Report - Appeals, dated February 6, 2008 [AR 217-22].) Plaintiff's credibility with respect to these assertions is rejected by the ALJ who found that "there is no objective medical basis for the wholesale limitations he has alleged." (AR 19.)  But, the Court notes that Plaintiff's anxiety and depression concerning his seizures have been consistently reported by him to medical professionals.  For example, he received a Disability Neurological Evaluation from Dr. Gluckman on  May 7, 2009 (AR 579-87), and reported that he "stays at home because he is afraid of having a seizure." (AR 579.)  Dr. Gluckman diagnosed anxiety disorder secondary to seizures. (AR 586.) It appears that there is a medical basis for Plaintiff's anxiety in that his medications to control seizures have not been properly balanced since he received his cranial injury from being hit by a baseball bat. (See Dr. Gluckman's conclusions at AR 587.)  As Dr. Gluckman noted, per Plaintiff's father's history, Plaintiff's anti-seizure medications "cause him, at times, to appear drunk ..." (AR 586.)  All in all, this evidence is quite relevant to an assessment of an individual's limitations with regard to his activities of daily living, one of the functional areas which must be mandatorily evaluated with regard to an assessment of an individual's mental impairments.

    Finally, the Court is not satisfied with the ALJ's rejection of the findings of the State Agency psychiatrist performed pursuant to the PRT, which indicate moderate limitations in certain areas involving understanding and memory; sustained concentration and persistence; social interaction; and adaptation. (See AR at 497-98.) If the ALJ depreciated the findings of the State Agency psychiatrist based upon the reports of Dr. Colonna, such a finding is not based

upon substantial evidence, for the reasons the Court has discussed.

For the foregoing reasons, the Court concludes that the ALJ's finding of non-severe mental impairment at Step Two of the sequential evaluation process is not supported by substantial evidence, and must be reviewed de novo on remand.

Similarly, as to Plaintiff's second issue, concerning side effects of medications, this will be reexamined de novo on remand. The Court does not agree with the Commissioner that side effects of medications have been objectively undocumented in the record. As the Court has noted with regard to its discussion of the first issue, it is clear from the medical records that Plaintiff's anti-seizure medications have been adjusted and readjusted on numerous occasions, apparently due to their inability to consistently control his seizures, and/or side effects from them. Plaintiff father told Dr. Gluckman that, sometimes, Plaintiff appears to be "drunk" from these medications. Plaintiff asserted that he suffers from frequent headaches which may well be attributed to the medications. The ALJ's conclusion that Plaintiff has been noncompliant with medication was apparently based upon the testimony of the ME at the hearing, however, on cross-examination by Plaintiff's attorney, the ME conceded that based on the metabolism of certain individuals, and other factors, there may be a fluctuation in medication levels which "may not be the patient's fault per se." (AR 39.) The ME testified that one of the drugs Plaintiff takes, Topamax, "does impair thinking unlike Dilantin." (AR 44.) He also testified that "Topamax can cloud people's ability to remember things." (AR 40.) Although the ME believed that notations in the medical records that Plaintiff was taking 400 mg twice a day of Topamax must be incorrect (characterized

by him as "a 'typo'") the Court is not necessarily convinced that it is the case, or in any event, it may be the case that even lesser doses of Topamax may cause such side effects. The ALJ's conclusion, therefore, that there is no objective evidence to support the side effects of which Plaintiff complains, is highly problematic. Basing the credibility assessment, which would include side effects of medications, the finding that Plaintiff was noncompliant with his medications is simply not substantiated by the record presented to the Court. Further, the issue is not solely whether side effects from medication disable Plaintiff from employment. Instead, the question is also whether, if such side effects exist, they substantiate non-exertional limitations relevant to an assessment of Plaintiff's residual functional capacity. Side effects of medication need not be totally disabling to be relevant in the Social Security evaluation process.

This matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**


DATED: September 13, 2010            /s/
                         VICTOR B. KENTON
                         UNITED STATES MAGISTRATE JUDGE